**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 08-cv-02766-CMA

ROBERT L. HUDSON,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## ORDER OF REMAND TO ADMINISTRATIVE LAW JUDGE

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Robert Hudson appeals from the denial of benefits by the Social Security Commissioner ("Commissioner").  After a hearing on Plaintiff's application, the Administrative Law Judge ("ALJ") found that Plaintiff was not "disabled" within the meaning of the Social Security Act ("Act") because Plaintiff could perform gainful work within the national economy despite his impairments.  The Court, having read the briefs and heard oral argument, will REVERSE AND REMAND for additional proceedings consistent with this Order.

## BACKGROUND

**I.     MEDICAL HISTORY**

Plaintiff was born February 9, 1958.  (*See, e.g.,* Administrative Record at 22, 29 ("Admin.").)  He lives with his mother and sister, is not married, and has no children. Plaintiff graduated high school, and can read and understand English.  (*Id.* at 101, 107.)

He alleges that he suffers from kidney disease, a chronic rash on his legs, adult-onset diabetes mellitus, obesity, hypertension, hyperlipidemia, and learning disabilities.  He argues that these impairments cause him pain, shortness of breath, and prevent him from standing, walking, or sitting for too long without having to move around.  Plaintiff filed an application for supplemental social security income benefits on January 25, 2007.  (*Id.* at 79.)

Plaintiff's primary complaint concerns his kidney disease and diabetes.  Following an earlier diagnosis and treatment for adult-onset diabetes, Plaintiff sought emergency treatment for abdominal pain at Memorial Hospital in Colorado Springs, Colorado, on November 8, 2006.  (*Id.* at 145-77.)  Dr. Brad Yuan opined that Plaintiff likely had stage III chronic kidney disease[1] with massive proteinuria and acute pyelonephritis.[2]

Although the hospital records disclosed evidence of obesity and hypertension, the records do not indicate that these conditions contributed heavily to Plaintiff's pain or symptoms.  Other tests performed at Memorial also came back negative.  (*Id.*) For example, CT scans of the abdominal and pelvic area did not disclose evidence of stones or intraabdominal pathology (*Id.* at 145.); Plaintiff had clear lung sounds (*id.* at 147), 5/5 strength in his extremities (*id.* at 154), and regular cardiac functioning.

---

[1]   There are five stages of chronic kidney disease, with the severity of the disease being ranked according to glomerular filtration rate.  Stage three represents a filtration rate between 30-59 and corresponds with a moderate decrease in renal function.  *See* http://www.umm.edu/eri/kidneys.htm (last visited August 17, 2009).

[2]   Pyelonephritis is an ascending urinary tract infection that has reached the kidneys. *See* http://kidney.niddk.nih.gov/kudiseases/pubs/pyelonephritis/ (last visited August 24, 2009).

(*Id.* at 156.)  After Plaintiff's condition had improved "markedly," he was discharged on November 13, 2006, with instructions to follow up on his diabetes treatment.  (*Id.* at 145.)

Plaintiff did follow up with Dr. Yuan, and two physicians assistants, Jeff Waters and Jody Veatch.  (*Id.* at 182-207.)  At a follow up with Dr. Yuan on November 30, 2006, Plaintiff reported that he had nocturia twice per night, knee and ankle pain, tingling in his feet, and scaly skin.  (*Id.* at 184.)  In January 2007, Dr. Yuan noted that Plaintiff's blood pressure had "improved a lot" but that Plaintiff had not been checking it at home.  (*Id.* at 182.)  Dr. Yuan also reported that Plaintiff's skin showed no acute lesions or rash.  (*Id.*)  Plaintiff also denied shortness of breath.  (*Id.*)  However, in March 2007, Dr. Yuan noted that Plaintiff had shortness of breath when climbing stairs and dry, scaly skin on his legs, but that Plaintiff showed "no acute distress."  (*Id.* at 185.)

Plaintiff first visited PA Waters for follow up immediately after leaving Memorial Hospital in November 2006.  (*Id.* at 201.)  PA Waters noted Plaintiff's various impairments, including the fact that he Plaintiff a "slow learner."  (*Id.* at 202.)  Over the next few months, PA Waters monitored Plaintiff's diabetes, blood pressure, and medications (at relevant times, Plaintiff took four or five different medications related to his diabetes, high blood pressure, and skin condition).  (*See, e.g., id.* at 193.)  In a February 2007 visit to PA Waters, Plaintiff reported that "everything is good," and that he merely needed a refill on his medications.  (*Id.*)  At this visit, PA Waters noted that Plaintiff had very dry skin but that Plaintiff otherwise had 5+/5 muscle strength; normal

respiration and heartbeat; articulate speech; and tested normal in a straight leg raise test.  (*Id.* at 194.)

PA Veatch saw Plaintiff in December 2006.  She noted that Plaintiff was "[d]oing well" and seeing a nephrologist on a regular basis.  (*Id.* at 197.)  PA Veatch found that he had no rash or other serious skin problems, regular heart rate and respiration, normal gait, 5+/5 muscle strength, normal motor and fine motor function, articulate speech, and a normal mental status exam.  (*Id.* at 198.)

In March 2007, Gayle Frommelt, Ph. D., completed a Psychiatric Review Technique form.  (*Id.* at 226-38.)  Ms. Frommelt, who did not physically examine Plaintiff, found no medically determinable impairment.  (*Id.* at 226.)  Also in March 2007, the state agency decision maker completed a Physical Residual Functional Capacity ("RFC") Assessment.  (*Id.* at 217-24.)  The RFC Assessment stated that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk and sit for six hours out of an eight-hour day with regular breaks.  (*Id.* at 218.)  The RFC Assessment also stated that Plaintiff had no restrictions on his ability to push and/or pull, and had no postural, manipulative, visual, communicative, or environmental restrictions.  (*Id.* at 218-22.)

In his own filings with the Commissioner, Plaintiff contends that his impairments have rendered him unable to play sports that he used to play and that fatigues easily. (*Id.* at 111.)  He states that he has to lie down for around three hours per day and elevate his feet repeatedly to keep his legs from swelling.  (*Id.* at 29, 34.)

## II.     PROCEDURAL HISTORY

Plaintiff filed his application for benefits on January 25, 2007, and the state denied it on March 21, 2007.  (*Id.* at 51.)  Plaintiff requested a hearing before an ALJ on May 9, 2007 (*id.* at 59), and a hearing was held December 18, 2007.  (*Id.* at 23-48.) The ALJ issued a written decision denying Plaintiff's application on January 30, 2008. (*Id.* at 14-22.)

### A.     The ALJ Hearing

Plaintiff and a vocational expert, Martin Rower, testified at the hearing.  Plaintiff testified first, and on direct examination by his attorney, Plaintiff described his various impairments, *e.g.*, diabetes, high blood pressure, "swollen" kidneys, and a skin rash. (*Id.* at 27.)  Plaintiff also described his symptoms, including a swollen leg, shortness of breath, difficulty walking, pain in his leg and side, tingling in his hands and feet, and fatigue.  (*Id.* at 27-35, 41-42.)  He testified that his pain was sharp (versus dull) and that on an average day, he would rate the pain as a seven or eight out of ten.  (*Id.*)  Plaintiff stated that his diabetes medication made him dizzy, and that he sometimes had trouble concentrating.  (*Id.* at 35-36.)  Plaintiff also stated that he had trouble reading; he described himself as a "slow reader." (*Id.* at 36.)

Notwithstanding his symptoms, Plaintiff testified that he read the newspaper "a little bit," that he could lift up to ten pounds regularly, that he shopped for food and personal items with his mother and sister approximately twice per month, and that he could shower and groom himself.  (*Id.* at 37-41.)  Plaintiff stated that he would shop

for around thirty-five or forty minutes and that he leaned on the shopping cart to walk around the store.  (*Id.* at 40-41.)

During a brief examination by the ALJ, Plaintiff stated that he was 5'10" tall and weighed about 250 pounds.  (*Id.* at 42-43.)

Mr. Rower testified next.  He described Plaintiff's previous jobs as a polisher and electro-plater helper for a lock company, janitor, and laundry operator for a hotel. (*Id.* at 44.)  Mr. Rower noted that each of these jobs involved either heavy or medium work and varying degrees of skills.  (*Id.*)  On cross examination by Plaintiff's counsel, Mr. Rower stated that Plaintiff could not do any of his previous jobs if he were limited to light work, as recommended in the RFC Assessment.  (*Id.* at 45.)  Mr. Rower also stated that he "would think" that other jobs existed for someone who was limited to the full range of light work, but he did not describe any jobs in the Colorado or national economies.  (*Id.* at 46.)  Mr. Rower also acknowledged that Plaintiff could not find competitive employment if Plaintiff's impairments forced him to lay down for two hours per work day.  (*Id.*)

B.    The ALJ's Written Decision

The ALJ issued a written decision denying Plaintiff's application for benefits on January 30, 2008.  (*Id.* at 14-22.)  In his decision, the ALJ described the applicable law and provided ten findings of fact and conclusions of law in Plaintiff's case.  (*Id.*) Notably, the ALJ found that Plaintiff had not been engaged in substantial gainful employment since January 25, 2007; that he had three severe impairments, diabetes

mellitus, stage three kidney disease, and obesity; but that these impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404.  (*Id.* at 16-17.)

Next, the ALJ analyzed Plaintiff's RFC.  (*Id.*)  In doing so, the ALJ re-counted most of Plaintiff's alleged impairments and symptoms, but found that Plaintiff lacked credibility regarding "the intensity, persistence and limiting effects" of his symptoms. (*Id.* at 19.)  In particular, the ALJ noted that Plaintiff's allegations regarding his ability to sit or stand for only two hours in a normal workday were not supported by the medical record.  (*Id.*)  The ALJ then described Dr. Yuan and PAs Waters and Veatch's records in some depth and pointed out that the medical records contrasted somewhat with Plaintiff's testimony.  (*Id.* at 19-20.)  In discussing the RFC Assessment, the ALJ acknowledged that the Assessment was not completed by an acceptable medical source, but that it was "supported by the medical evidence." (*Id.* at 20.)  Thus, the ALJ gave "great weight to the opinions of the State Agency."  (*Id.*)

The ALJ acknowledged that Plaintiff could not perform his past relevant work, but nevertheless concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. (*Id.* at 21.)  In making this finding, the ALJ relied on the Medical-Vocational Guidelines contained at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Guidelines"), specifically Rule 202.20.  After briefly describing how the Guidelines work, the ALJ concluded that the Guidelines directed a finding that Plaintiff was not disabled within the meaning of the Act.  (*Id.*)

The Appeals Council denied Plaintiff's request for review on November 3, 2008. (*Id.* at 1.)  Thus, the ALJ's decision constitutes the final agency decision on the matter.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act establishes the scope of this Court's review of the Commissioner's denial of benefits.  *See* 42 U.S.C. § 1383(c)(3) (2006) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g).  Thus, this Court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See* § 405(g); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The Court must uphold the Commissioner's decision if it is supported by substantial evidence.  See *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This Court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).

That does not mean, however, that review is merely cursory.  To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient

relevant evidence that a reasonable person might deem adequate to support the

ultimate conclusion.  *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).  A decision is

not based on substantial evidence if it is overwhelmed by other evidence in the record

or if there is a mere scintilla of evidence supporting it.  *Turner v. Heckler*, 754 F.2d 326,

328 (10th Cir. 1985).  The ALJ's decision is also subject to reversal for application of the

wrong legal standard.  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816

F.2d at 512.

## ANALYSIS

Under the standard of review described above and the applicable law described

below, the Court will remand the ALJ's decision for further proceedings consistent with

this opinion.

## I.    APPLICABLE LAW

A claimant must qualify for disability insurance benefits under the Act.  To do so,

the claimant must meet the insured status requirements, be less than sixty-five years

of age, and under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Act defines a disability as an inability "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

In proving disability, a claimant must make a prima facie showing that he is unable to

return to the prior work he has performed.  *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th

Cir. 1988).  Once the claimant meets that burden, the Commissioner must show that

the claimant can do other work activities and that the national economy provides

a significant number of jobs the claimant could perform.  *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a

claimant qualifies for disability insurance benefits.  *See* 20 C.F.R. § 404.1520; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  A claimant may

be declared disabled or not disabled at any step; and, upon such a determination, the

subsequent steps may be disregarded.  *See* 20 C.F.R. § 404.1520(a); *Williams v.*

*Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  First, the claimant must demonstrate that

he is not currently involved in any substantial gainful activity.  20 C.F.R. § 404.1520(b).

Second, the claimant must show a medically severe impairment (or combination of

impairments) which limits his physical or mental ability to do basic work activities.

§ 404.1520(c).  At the third step, if the impairment matches or is equivalent to

established listings, then the claimant is judged conclusively disabled.  § 404.1520(d).

If the claimant's impairments are not equivalent to the listings, the analysis proceeds to

the fourth step.  At this stage, the claimant must show that the impairment prevents him

from performing work he has performed in the past.  *See Williams*, 844 F.2d at 751

(citations omitted).  If the claimant is able to perform his previous work, he is not

disabled.  20 C.F.R. § 404.1520(e); *Williams*, 844 F.2d at 751.  The fifth step requires

the Commissioner to demonstrate that:  (1) the claimant has the RFC to perform other

work based on the claimant's age, education, past work experience; and (2) there is

availability of that type of work in the national economy.  *See*  20 C.F.R. § 404.1520(f);

*Williams*, 844 F.2d at 751.

## II.      THE ALJ CORRECTLY ASSESSED AND DISCUSSED PLAINTIFF'S RFC.

Plaintiff first argues that the ALJ erred in expressing Plaintiff's RFC in terms of

the capacity to do "light work" and not in terms of a function-by-function description.

Plaintiff also contends that the ALJ failed to adequately discuss how the medical

evidence supports the ALJ's RFC assessment.

Plaintiff correctly argues that the ALJ should include a discussion of Plaintiff's

work-related functional capacities in the ALJ's written decision.  *See* SSR 96-8p.

However, Plaintiff is incorrect in arguing that the ALJ must provide an explicit

explanation of the medical evidence for every functional capability.  *See Howard v.*

*Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  Therefore, Plaintiff is also incorrect in

his contention that the ALJ failed to provide a sufficient discussion in this case.

In arguing that the ALJ failed to discuss Plaintiff's functional capacity, Plaintiff

focuses solely on the ALJ's conclusory sentence on the subject of RFC, wherein the

ALJ stated that Plaintiff "has the functional capacity to perform the full range of light

work."  (Admin. at 20.)  In response, the Commissioner argues that the ALJ's decision

"assumes that [Plaintiff] was capable of performing substantially all of the exertional and

nonexertional functions required to work at that level."  The Court agrees with Plaintiff

that the ALJ's discussion could be more explicit, especially regarding Plaintiff's non-

exertional limitations.  *See* SSR 96-8p.  But, the Court also concludes that Plaintiff's

argument ignores three pages of discussion regarding Plaintiff's functional abilities that precede the ALJ's RFC conclusion.  For example, the ALJ noted that Plaintiff denied auditory or visual symptoms at a November 30, 2006 visit with Dr. Yuan (Admin. at 19-20), and that on December 19, 2006, PA Veatch found Plaintiff had a normal gait, 5+/5 strength, normal motor and fine motor function and a normal straight leg and Romberg test.  (*Id.* at 20.)  The ALJ may not have clearly described these medical findings *vis-á-vis* Plaintiff's functional capacities, *e.g.*, walking, standing, sitting, reaching, etc., but the ALJ does not have to include such a line-item list under Tenth Circuit precedent. *Howard*, 379 F.3d at 949 (declining to require function-by-function description of medical evidence).

Moreover, it does not take a large inferential leap to deduce that the ALJ gave in-depth discussion to Plaintiff's medical records in an effort to assess and discuss Plaintiff's strength-based functional capacities (*e.g.*, walking, standing, lifting, pushing, pulling) and manipulative functional capacities (*e.g.*, reaching, handling, fingering, or feeling).  Although the ALJ could have been more explicit in tying the medical evidence to an assessment of Plaintiff's RFC, the ALJ's decision clearly explains the basis for his RFC assessment and the Court need not remand this case for further analysis or discussion on this issue.  *See Howard*, 349 F.3d at 949.

Plaintiff also contends that the medical facts described by the ALJ in the written decision are "not the kind of functional limitations to be expected from a person suffering stage III kidney disease."  Plaintiff argues that by focusing on the results from Plaintiff's

muscular and nervous system tests, the ALJ ignored the functional limitations Plaintiff

claims to have suffered as a result of his kidney impairments.  Contrary to Plaintiff's

argument, the ALJ did not ignore Plaintiff's kidney disease is assessing Plaintiff's RFC.

In fact, the ALJ found that Plaintiff suffered from stage three kidney disease, but found

that Plaintiff's symptoms had largely abated after the November 2006 hospital visit, or

were treatable with medication.  The ALJ's conclusion on this issue finds support in the

ALJ's determination that most of Plaintiff's allegations of severe, debilitating functional

limitations lacked credibility; a finding that Plaintiff does not seriously challenge on

appeal.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (noting that

"[c]redibility determinations are peculiarly the province of the finder of fact") (quoting

*Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).  The

ALJ's conclusion that Plaintiff's kidney disease did not produce disabling symptoms also

finds substantial evidence to support it in the medical evidence from PAs Waters and

Veatch, and the Court will not disturb this conclusion on appeal.

Additionally, Plaintiff ignores the fact that the ALJ discussed the particular

medical evidence that he did, *e.g.,* Plaintiff's muscle strength and motor functioning,

rather than leg swelling or dry skin, because these objective medical facts relate directly

to Plaintiff's physical functional capacities more than Plaintiff's own allegations of

disabling pain.  For example, swollen legs would not affect Plaintiff's functional

capacities unless the swelling also caused a decrease in strength or motor function that

affected Plaintiff's ability to stand, walk, sit, etc.  In other words, regardless of the nature

of Plaintiff's disease, the ALJ discussed the medical facts that related to Plaintiff's physical ability to sustain competitive employment within the national economy.  Plaintiff cannot fault the ALJ for cutting straight to the chase and discussing more relevant medical facts, instead of discussing tangential symptoms that do not affect the ALJ's ultimate decision.

Although the ALJ did not provide an explicit function-by-function assessment of Plaintiff's functional abilities, the ALJ implied that Plaintiff had the functional capacity, exertional and non-exertional, attendant to light work.  Moreover, the medical facts and discussion of Plaintiff's functional capacity in the written decision in this case are exactly the type of facts and discussion that should accompany RFC assessment.  *See* 20 C.F.R. § 416.927 (discussing how ALJs should evaluate opinion evidence to arrive at RFC); SSR 96-8p.  Thus, although the ALJ could have better tied his discussion of the medical evidence to his RFC analysis, the Court concludes that remand is unnecessary on this issue.

## III.   THE ALJ PROPERLY EVALUATED THE MEDICAL SOURCE EVIDENCE.

Plaintiff next contends that the ALJ erred by rejecting the opinions of Plaintiff's treating medical sources without providing specific legitimate reasons for doing so. However, the Court disagrees with Plaintiff on this issue, as well.

An ALJ will generally give greater or controlling weight to the opinions of medical sources who have treated a claimant, versus non-medical sources or medical sources who have not treated a claimant.  *See* 20 C.F.R. § 404.1527(d)(2); *Langley v. Barnhart*,

14

373 F.3d 1116, 1119 (10th Cir. 2004).  However, if an ALJ finds that a treating source opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques, or inconsistent with other evidence in the record, the ALJ may decline to give the treating opinion controlling weight.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p.  An ALJ must describe his reasons for the weight given to a treating opinion in order to allow a reviewing court to determine whether the ALJ erred in assigning the weight that he did.  *Watkins*, 350 F.3d at 1301.

In this case, contrary to Plaintiff's argument, the ALJ did not reject any of the treating medical source opinion evidence in the evidentiary record.  Indeed, the ALJ cited to and accepted the opinions of Dr. Yuan and PAs Waters and Veatch, the only medical sources in the record, in describing Plaintiff's impairments and symptoms in the written decision.  (Admin. at 17-20.)  Although the ALJ did not explicitly state that he gave "controlling weight" to any of the medical source opinions in the record, it is clear from the ALJ's written decision that he did not reject any of the treating medical opinions, either.  Indeed, the ALJ does not identify any faulty medical or laboratory techniques, or inconsistencies among the opinions of Dr. Yuan or PAs Waters or Veatch.  Thus, this Court can satisfactorily review the ALJ's reasoning and, in doing so, the Court concludes that the ALJ followed the applicable administrative rules and regulations by giving controlling weight to the appropriate medical sources.  *See Watkins*, 350 F.3d at 1301.

Moreover, the ALJ did not place greater weight on the opinion of the state agency examiner than he did on the treating medical source opinions.  The ALJ explicitly noted that the opinions expressed in the state agency RFC Assessment comported with the treating medical source opinions of Dr. Yuan and PAs Waters and Veatch.  (Admin. at 20.)  Given that the state agency opinions mirrored the treating source opinions in terms of functional capabilities, and given that ALJ chose the words, "great weight," rather than, "controlling weight," in describing the weight he gave to the opinions of the state agency, the Court finds that the ALJ did not intend to reject any of the treating source opinions or give them less than controlling weight in favor of the state agency.  Rather, the ALJ merely pointed out that the state agency opinions supported his RFC determination, which was based on the treating opinions in the record.

In short, the Court finds substantial evidence indicating that the ALJ followed the applicable regulations, agency rulings, and Tenth Circuit precedent, and the Court does not interpret the ALJ's decision as rejecting or giving less than controlling weight to the treating medical source opinions in the record.  Thus, the Court concludes that remand on this issue is unnecessary.

**IV.     THE ALJ CORRECTLY APPLIED THE GUIDELINES TO FIND THAT JOBS EXISTED IN THE NATIONAL ECONOMY.**

Plaintiff next argues that the Commissioner did not meet his burden at step five to show that work existed within the national economy for a person with Plaintiff's functional capabilities.  Plaintiff contends that the ALJ's reliance on Mr. Rower's

testimony was insufficient to establish that jobs existed within the national economy that Plaintiff could perform.  However, the Court disagrees with Plaintiff and finds that the ALJ correctly relied on the Guidelines in satisfying the Commissioner's burden.

As noted above, at the final stage of the sequential disability determination process, if a claimant can show that he is unable to perform his previous jobs, the burden shifts to the Commissioner to show that jobs exist in the national economy for a person with the claimant's skills, age, education, job experience, and functional capacities.  *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (citing *Williams*, 844 F.2d at 751-52).  If a claimant has no non-exertional limitations, the Commissioner can meet this burden through use of the "grids" or "guidelines."  *Daniels*, 154 F.3d at 1132.  Thus, the Guidelines may obviate the need for a vocational expert in certain cases.  *Id.* (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992)).  However, the Commissioner cannot rely exclusively on the Guidelines when a claimant has non-exertional impairments.  *See* 20 C.F.R. § 404.1545(d).

In his Opening Brief, Plaintiff argues that the Commissioner failed to meet his burden because the ALJ relied on Mr. Rower's testimony to establish the existence of a significant number of jobs for a person with Plaintiff's age, education, skills, and functional abilities.  According to Plaintiff, Mr. Rower's testimony did not actually establish the existence of jobs in the national economy that Plaintiff could perform.

The Court agrees with Plaintiff that Mr. Rower's equivocal testimony regarding the existence of jobs for Plaintiff might present a problem if the ALJ actually relied on

17

Mr. Rower's testimony to meet the Commissioner's burden.  However, the ALJ did

not rely on Mr. Rower's testimony to prove that jobs existed in the national economy.

Rather, as the ALJ's Finding No. 9 makes clear, the ALJ declined to use Mr. Rower's

testimony and turned instead, to the Guidelines to meet the Commissioner's burden.

(Admin. at 21.)  The ALJ's use of the Guidelines comports with agency practice and

controlling precedent because, as the Supreme Court has noted, the Guidelines "relieve

the [Commissioner] of the need to rely on vocational experts by establishing through

rulemaking the types and numbers of jobs that exist in the national economy." *Heckler*

*v. Campbell*, 461 U.S. 458, 461 (1983).  Thus, Plaintiff's argument that Mr. Rower's

testimony is insufficient is something of a red herring under the circumstances of this

case.

      In his Reply Brief, Plaintiff changes tack slightly.  He argues that the ALJ could

not rely exclusively on the Guidelines to establish that a significant number of available

jobs existed because Plaintiff had non-exertional limitations.

      However, Plaintiff's change in strategy fairs no better.  In his brief, Plaintiff fails to

identify the non-exertional limitations from which he allegedly suffers.  Although Plaintiff

pointed out some non-exertional limitations at the hearing before this Court, the

limitations that Plaintiff identified are not supported by the medical evidence.  Moreover,

as noted above, the Court finds that the ALJ's assessment of Plaintiff's RFC, in which

the ALJ found no non-exertional limitations, is supported by substantial evidence.  Thus,

the ALJ did not need to rely on Mr. Rower in this case because the Guidelines directed a finding of not disabled.

**V.      THE COMMISSIONER'S SUBSEQUENT DECISION REGARDING PLAINTIFF'S DISABILITY REQUIRES REMAND IN THIS CASE.**

Plaintiff also argues that the ALJ's decision in this case cannot comport with a February 19, 2009 decision by the Commissioner finding that Plaintiff was disabled beginning September 5, 2008.  In its briefing, the Commissioner contended that the subsequent award of benefits did not affect the Commissioner's decision in this case. However, at oral argument before this Court the Commissioner acknowledged that remand on this issue might be appropriate.

The Commissioner argues that Plaintiff's subsequent benefits award was based on a different time period than the time period under review in this case, but, after looking into the issue, the Commissioner acknowledged that Plaintiff's mental disability, that forms the basis for the February 19, 2009 benefits award is extremely probative of his mental health condition during the time period under review in this case.  Indeed, according to counsel for the Commissioner, the February 19, 2009 benefits award was based on a finding that Plaintiff suffered from mental retardation, which probably affected Plaintiff during the disability benefits period at issue in this case. Unfortunately, the ALJ did not have that evidence before him when he rendered his decision in this case.  Although some evidence that Plaintiff suffered from a mental health impairment existed in the medical record before the ALJ in this case, *e.g.*, various statements regarding Plaintiff's slow reading, the extent of Plaintiff's mental health condition was not

fully evaluated in Dr. Yuan or PAs Waters and Veatch's opinions.  Had the ALJ had the benefit of the full evaluation of Plaintiff's mental health, he might have rendered a different decision.

Accordingly, although the Court believes the ALJ made the right decision based on the evidence before him at the time, the Court will remand this case because the Commissioner's February 19, 2009 decision to award benefits based on Plaintiff's mental retardation is inconsistent with a denial of benefits in this case.  The Court directs the ALJ review the new evidence of Plaintiff's mental impairments and to make a determination consistent with the new medical evidence and this Order.

## CONCLUSION

Plaintiff has raised four distinct issues for review, but only one of these issues require remand for further proceedings.  First, the ALJ properly assessed and discussed Plaintiff's RFC on the basis of the medical evidence in the record and the ALJ's determination regarding Plaintiff's credibility.  Second, the ALJ gave proper weight to Plaintiff's treating medical sources by given them controlling weight.  Although the ALJ's written decision could have more clearly discussed Plaintiff's exertional and non-exertional limitations, the Court concludes that the ALJ's decision is supported by substantial evidence.  Third, the ALJ properly applied the Guidelines to meet the Commissioner's burden of establishing that work existed with the national economy for a person with Plaintiff's age, job history, skills, and functional capacities.  However the Court will remand this matter under the fourth argument because Plaintiff has shown

that his February 19, 2009 benefits award, which was based on a mental health impairment, is inconsistent with a denial of benefits in this case.

Accordingly, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Order.

DATED:  August __25__, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge